UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,

        Plaintiff,

vs.

        Case No.  00-80913
        HON.  GEORGE CARAM STEEH

MARY JANE KIMBERLY JOHNS,

        Defendant.
_____/

OPINION AND ORDER REGARDING THE GOVERNMENT'S MOTION TO EXCLUDE ALL E-MAIL AND INSTANT MESSAGE COMMUNICATIONS BETWEEN DEFENDANT AND AV-1 OR OTHERS (DOC. 53)

Defendant Mary Jane Kimberly Johns is accused of kidnapping her former girlfriend, Laura Westphal, in May 2000; transporting Westphal across state line and using a firearm in furtherance of this crime. The Government brought charges of kidnapping and the use of a firearm in furtherance of a crime of violence in 2000, but defendant absconded during her pretrial release for 16 years. This case is presently before the Court on the Government's motion to exclude all e-mail and instant message communications between defendant and Westphal or others. (Doc. 53).

Defendant has listed 269 messages on their exhibit list. The messages may be categorized as follows:

- From Janos17@aol.com (Westphal) to Jeepie97@aol.com (defendant): Exhibits T, U, X;
- From Jeepie97@aol.com (defendant) to Janos17@aol.com (Westphal): Exhibits Y, Z;
- Between Janos17@aol.com and Third Parties: Exhibits V, W, X;
- From Jeepie97@aol.com (defendant) to Jeepie97@aol.com (defendant): Exhibit AA;
- Between Jeepie97@aol.com (defendant) and Third Parties: Exhibits BB, CC, DD, EE.

These messages date from June 1999 to May 2000. They contain personal, intimate, and sexual details of the couple's relationship. The Government challenges their admissibility on the basis of authenticity, hearsay, relevancy, and Fed. R. Evid. 403.

The Court heard oral argument on March 13, 2017. As stated on the record, the Court opined that, given the nature and volume of the messages, it seemed unlikely that they would be admissible. The Court acknowledged that the messages may be used for impeachment, but noted that using a message for impeachment purposes does not make the document itself admissible as an exhibit. The Court concluded by stating that it would render an opinion establishing parameters for the admissibility of these messages.

## I. Background

Defendant and Westphal were in a romantic relationship from the summer of 1999 through April 2000. They lived in different states and used AOL instant messaging and e-mail to communicate. Defendant's AOL account was Jeepie47@aol.com. Westphal's AOL account was Janos17@aol.com.

Following their breakup, defendant appeared at Westphal's parent's home in May 2000. When Westphal returned to the home, the women departed on a drive to Iowa. The Government alleges that defendant held Westphal at gunpoint, forcing her to drive, and holding her hostage for eight days. During this time, defendant allegedly threatened to kill Westphal and would not let Westphal out of her sight. Defendant denies the kidnapping; asserting that Westphal left her home and traveled with defendant to avoid having her family discover her same-sex relationship and to ensure that defendant did not commit suicide.

## II. Analysis

### A. Authenticity

The messages at issue here are AOL e-mails allegedly printed from the Jeepie97 account which belonged to defendant. The Government

challenges their authenticity on multiple grounds. First, the Government asserts that the messages may have been edited or falsified. Second, the Government questions their production, noting that they were not obtained directly from AOL, but rather printed by defendant or an unknown person on various dates following the indictment, and in some cases, after defendant became a fugitive. Finally, the Government asserts that it is impossible to determine who actually wrote each message because defendant often posed as Westphal and wrote to others from Westphal's account. The Government does not cite a specific evidentiary rule to support their argument.

Defendant responds that they can easily authenticate these messages because they bear Westphal's e-mail address, the content of the messages illustrates Westphal's knowledge – facts which are further corroborated by Westphal's statements to the FBI – and the messages are signed with Westphal's first name or nickname. Defendant did not explicitly respond to the Government's concerns that the messages were edited or falsified, but merely argued that the Government's concern went to the weight rather than the admissibility of the messages.

The Court finds that the Government's challenge is best classified as a challenge to authentication under Fed. R. Evid. 901 as well as a best evidence challenge under Fed. R. Evid 1001-1004.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Here, the Court assumes that defendant will claim that each print out is an e-mail message between the parties listed in the "to" and "from" lines, that the messages were in fact sent by the individual who owned the account listed in the "from" line, and that the text is an accurate representation of the each e-mail as originally sent.

The Court doubts whether defendant can produce evidence and lay the proper foundation to support a finding that the messages satisfy the aforementioned claim. The Government asserts that defendant often used Westphal's AOL account. This creates doubt regarding whether a message that defendant claims was sent by Westphal is in fact a message sent by Westphal.

Additionally, the Court has concerns with the content of the messages. Defendant had not yet laid adequate foundation to prove that the text of the proposed exhibits accurately reflects the original messages

as they were when originally sent in 1999 and 2000. The Court's concerns are based in the Government's claims that the messages were not collected directly from AOL, but rather from an unknown individual, perhaps defendant herself, who may have had motive to alter the content of the messages following defendant's indictment.

Finally, the Court would appreciate foundation regarding the format of the messages. Currently, the Court does not know whether the printed messages were printed directly from AOL in a view only mode that prohibited alterations, or whether the messages were copied from AOL and pasted into another program, like Microsoft Word, enabling a user to edit the text of the message. While this information bears on the Court's rule 901(a) assessment of whether the content of the text represents the messages that defendant purports them to be, this information also raises a query under the Best Evidence Rule.

For electronically stored information, an original is "any print-out – or other output readable by sight – if it accurately reflects the information." Fed. R. Evid. 1001(d). Fed. R. Evid. 1002 requires an original writing, recording, or photograph in order to prove its content unless the Federal Rules of Evidence provide otherwise. For example, Fed. R. Evid. 1003 permits the admissibility of duplicates to the same extent as the original

unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate. A duplicate is "a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." Fed. R. Evid. 1001(e). Additionally, Fed. R. Evid. 1004 excuses the original requirement in four specific scenarios.

These messages constitute a writing under Fed. R. Evid. 1001(a). Defendant has not stated whether these messages are originals or duplicates, or whether Fed. R. Evid. 1004 applies. If defendant can authenticate these messages and prove that they are originals, the messages would survive the Government's authenticity challenge.

The Court must undergo a more detailed analysis if the messages are duplicates. First, the Court would need to ensure that the text of the messages was not edited when the duplicates were produced. If edits were made such that the message no longer accurately represents the original, it may not be admissible as a duplicate under Fed. R. Evid. 1003.

Second, the duplicate may be inadmissible if the Government raises a genuine question on the original's authenticity. For example, an e-mail may be a proper duplicate of the original message. It could be copied from AOL and pasted into Microsoft Word without any edits. But, the original

AOL e-mail message itself may have authenticity problems.  This situation occurs in 33 exhibits; T14, T45, T48, U27, U43, U51, Y52, U58, U59, U68, U93, U98, U118, U124, U128, U130, Y5, Y6, Y7, Z13, AA1, AA2, AA3, AA4, AA5, AA6, AA7, AA8, AA9, AA10, AA11, AA14, and AA15.  These e-mails contain text from separate instant messaging conversations.  The instant messaging conversations were copied and pasted into an e-mail message.  It is possible that the text of the instant messaging conversations was edited during this process, so that the e-mail does not accurately reflect the instant messages.

Alternatively, defendant may assert that Fed. R. Evid. 1004 applies.  If defendant can properly state an exception to the original requirement, as well as authenticating the messages under Fed. R. Evid. 901(a), the messages will survive the Government's authenticity challenge.

**B. Hearsay**

The Government claims that all of the messages are inadmissible hearsay prohibited by Fed. R. Evid. 802.  But, this is only true if defendant offers the messages for the truth of the matter asserted and no exception applies.  Defendant proposes numerous exceptions under Fed. R. Evid. 803 and asserts that some messages will be used for impeachment purposes.  The Government concedes that some messages may be

permissible for impeachment, but cites Fed. R. Evid. 608(b) to ask the Court to limit their use such that extrinsic evidence cannot be used to prove specific instances of conduct.

Rule 608(b) states:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about.

Westphal is listed as a Government witness. Therefore, defense counsel may use the messages as extrinsic evidence to prove specific instances of Westphal's truthfulness or untruthfulness on cross examination.

For example, if Westphahl does not dispute having a romantic relationship with defendant, then defense counsel cannot use messages describing that relationship to prove Westphal's untruthfulness. But, if Westphal denies the relationship, defense counsel could impeach her character for truthfulness with probative specifics instances from the messages.

The Court is unable to make a pre-trial ruling on the admissibility of these messages under Government's hearsay challenge because it is not clear how defendant will offer each message and whether an exception applies. This context will be developed at trial. The Government may raise hearsay objections at that time.

**C. Relevance**

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and that "fact is of consequence in determining the action." Fed. R. Evid. 401.

The majority of these messages were exchanges between defendant and Westphal from June 1999 to April 2000. The women lived in different states and used email to communicate the personal details of their long distance relationship.

The Government does not dispute that the women had a romantic relationship and that Westphal did not want her parents to know about the relationship. Therefore, the Government claims, the messages are not necessary to prove these facts. Furthermore, the Government urges that the couple's relationship is not on trial, so the personal details of the relationship contained in the messages are irrelevant.

Defendant asserts that the messages are relevant because they establish the hidden nature of the couple's relationship, contradict Westphal's subsequent statements to the police, and, most importantly, impact an assessment of Westphal's credibility. Defendant claims that Westphal consensually traveled with defendant, and only labeled the events as a kidnapping after the fact, when Westphal was concerned that her parents would discover the same sex relationship. Defendant therefore intends to rely on a series of messages where Westphal lied, deceived, and concealed their same sex relationship to assert that her account of being kidnapped at gunpoint is also a lie.

Many messages contain merely mundane details of a relationship; saying hello, or setting up a time to speak on the phone. As long as the Government and Westphal do not dispute the existence of the women's romantic relationship, these messages would not make any fact more or less probable, and therefore, would be irrelevant. But, even if the secret nature of the couple's relationship is undisputed, messages relating to Westphal's lies, deception, and intent to keep the relationship secret are relevant because they impact the probability of defendant's defense.

**D. Fed. R. Evid. 403**

Pursuant to Fed. R. Evid. 403, the Court may exclude relevant

evidence if its probative value is substantially outweighed by the danger of unfair prejudice.

The Government argues that the messages containing sexual details have little to no probative value, which is outweighed by a danger of unfair prejudice. In response, defendant states that these messages are relevant because they show the nature of the parties' relationship.

The Court has conducted a brief examination of the 269 messages identified in defendant's exhibit list. A few are explicitly sexual, some are mildly sexual, and the remainder have no sexual content. The Court cautions that the explicitly sexual messages are likely to be held inadmissible under Fed. R. 403 if defendant attempts to introduce them at trial. These explicitly sexual messages have little to no probative value; the women's relationship is not disputed and their specific sexual history does not relate to the charges. In contrast, there is a significant risk of unfair prejudice; they graphically depict sexual acts in a same sex relationship.

### III. Conclusion

For the reasons stated above, the Court states the following parameters for defendant's use of the contested messages at trial.

The Court requires further foundation regarding the author and content of the messages in order to meet the Fed. R. Evid. 901(a) authentication standard of establishing that the message is what it purports to be.

The Court questions whether the messages are originals, duplicates, or fall under Fed. R. Evid. 1004, which exempts them from Fed. R. 1002's original requirement.

Messages relating to the mundane personal details of the couple's relationship are not relevant if the existence of the relationship is undisputed.

Messages relating to Westphal's lies, deception, and intent to keep the relationship secret are relevant.

The Court will entertain defendant's attempts to admit messages with sexual content but notes that, upon the Government's objection, those messages with explicitly sexual content will likely be held inadmissible under Fed. R. Evid. 403.

IT IS SO ORDERED.

Dated:  March 14, 2017

S/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 14, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk