UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.

Mary Jane Kimberly Lee Johns,

    Defendant.

                                  /

Case No: 00-80913

Hon. George Caram Steeh

**GOVERNMENT'S SENTENCING MEMORANDUM**

In May 2000, Defendant Kimberly Johns kidnapped her 19 year-old ex-girlfriend. She held AV-1 at gunpoint, threatened to kill her and AV-1's family, took her to Iowa, and raped her repeatedly. After AV-1 escaped, Johns was arrested and charged with kidnapping and using a firearm to commit a crime of violence.

But in September 2000, Johns fled from pre-trial supervision. For nearly 16 years, she lived in hiding. In order to avoid arrest, she stayed inside all day, did not have a job, had limited contact with her family, and used an alias to receive medical treatment. (PSR ¶ 75, 78, 92).

In March of 2016, the FBI finally found Johns in Wisconsin. She was arrested and returned to Detroit for trial. The government added a

new charge to the indictment: failure to appear after pre-trial release.

In March 2017, Johns proceeded to trial. Retired FBI agents traveled to Detroit to testify about a 17-year-old investigation. (Trial Tr., ECF No. 100, PageID 684; ECF No. 103, PageID 1472). AV-1's family members took the stand to recount the worst moments of their lives. (ECF No. 100, PageID 729–782; ECF No. 101, PageID 1141–1201; ECF No.103, PageID 1342–1387). AV-1 testified for two days, and her direct and cross examination lasted for seven hours. (ECF 100, PageID 824–913; ECF 101, PageID 979–1113; Exhibit A, 2017 Victim Impact Statement, *submitted under seal*). After trial concluded, the jury returned guilty verdicts on all counts.

In August 2017, this Court sentenced Johns to a below-guidelines sentence of 80 months for kidnapping (Count 1), four months for failure to appear (Count 3), and 84 months for using a firearm during the commission of a crime of violence (Count 2), all to run consecutively for a total sentence of 168 months. (PSR ¶ 16).

In June 2019, the Supreme Court held that the definition of a "crime of violence" in 18 U.S.C. § 924(c)—Count 2 for Johns—was unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319 (June

2

24, 2019). As a result, kidnapping no longer qualifies as a predicate "crime of violence" to support a § 924(c) charge without the now-voided residual clause. *Knight v. United States*, 93 F.3d 495, 2019 WL 4019860, at *1–2 (6th Cir. 2019); *see also United States v. Gillis*, 938 F.3d 1181, 2019 WL 4383203, at *15–21 (11th Cir. 2019). The Court has no choice but to vacate Johns's 924(c) conviction and re-sentence her.

Nothing has changed about the nature and circumstances of Johns's offense and the need for the sentence to reflect the seriousness of the crime. In 2017, the Court carefully considered the 3553 factors and crafted a 14-year sentence. (Sentencing Tr., ECF No. 94, PageID 568–574). The Court should impose the exact same sentence that it delivered in 2017: 168 months for kidnapping and failure to appear.

### *Guideline Range*

The Probation Department has calculated Johns's advisory sentencing guideline range to be 121 to 151 months.[1] (PSR ¶ 97). This

---

[1] The 2018 U.S. Sentencing Guidelines do not apply to Johns because she committed her offense in 2000. (PSR § 50). But if the current guidelines were applied to Johns's offense, she would have a base offense level of 32, increased by 2 levels for the use of a dangerous weapon, 6 levels for sexual assault, 1 level for holding the victim for more than 7 days, and two levels for obstruction of justice, resulting in a total offense level of 41 and a guideline range of life in prison.

3

range is based on the kidnapping base offense level of 24, a two-level increase for use of dangerous weapon, a one-level increase because the victim was not released before 7 days, and a three-level increase because Johns sexually exploited the victim. (PSR ¶¶ 52-55; USSG § 2A4.1(a), (b)(1), (b)(4)(B), (b)(5) (1998)). The Probation Department also added an additional two levels for obstruction of justice to account for Johns's 15.5 years as a fugitive, resulting in a total offense level of 32. (PSR ¶¶ 58, 62; USSG § 3C1.1 (1998)).

The government concurs with the guideline calculations set forth in the PSR. But an upward variance from 151 months to 168 months is warranted here to account for the severity of John's failure to appear. Johns did not flee for one week or one month or one year; she lived as a fugitive from 2000 to 2016. A two-level increase for obstruction of justice does not adequately account for the severity of Johns's obstruction. Not only did the 15 year delay impact the government's proofs, but it also caused additional trauma and harm to the victim.

4

### *18 U.S.C. § 3553(a) factors support the original sentence*

### a. The nature and circumstances of the offense

On May 11, 2000, Johns kidnapped AV-1 by pulling a gun on her in the car, cocking it, and ordering her to drive west. (ECF No. 100, PageID 856–858). For the next eight days, Johns and AV-1 drove from Michigan to Iowa. Their first stop was at a home in Dubuque, Iowa, where Johns said she was going to "end it all" by killing Randi (a teenage girl in the home), Randi's family, AV-1 and herself. (*Id.*, 866–869). Once they arrived outside of Randi's house in Iowa, Johns did not go through with her threat. Instead, she drove aimlessly around Iowa for the next week. Each day, she told AV-1 that she could and would kill her. (Exhibit A, p. 1). And at night, she raped AV-1. (*Id*; ECF No. 101, PageID 1087–1095, 1112–1113). During the kidnapping, AV-1 was "physically ill—constantly—shaking, nauseous, sick, and [her] body was constantly losing control because [she] was so scared." (Exhibit A, p.1). After a week, Johns drove AV-1 east from Iowa towards Michigan. Johns told AV-1 they were returning to AV-1's house where she planned to "end it all." (ECF No. 100, PageID 891-892). When Johns stopped in

Illinois to rent a hotel room, AV-1 pretended to be asleep and Johns left the keys in the car. Alone for the first time, AV-1 jumped over the center console, started the car, and drove away. (*Id.*, 893-903).

The FBI quickly arrested Johns after AV-1's escape. But despite Johns's arrest, AV-1 "was a mess after that." (Exhibit A, p.1). She slept upstairs on the floor in the room next to her parents because she was afraid to be alone on the lower floor of her home at night. (*Id.*). She had nightmares and regularly woke up crying. (*Id*, p.2). She saw a mental health professional for "a long time," and she dreaded seeing Johns at the upcoming trial. (*Id.*).

But before trial could commence, Johns absconded from a halfway house and failed to appear for court. (ECF No. 103, PageID 1404–1409). When Johns absconded, AV-1 had just returned to college for her junior year. When she received the news that Johns was missing, she was terrified. (Exhibit A, p.2). She wondered if Johns was on her way to kill her or hurt her family. (*Id.*). AV-1 "was a mess." (*Id.*). Campus security escorted her to class, and she wasn't allowed to be by herself. The university hung posters with Johns's picture all over campus "warning people to be on the lookout for her." (*Id.*). This meant that AV-1 "saw

6

her face on the walls of [her] dorm, [her] academic building, the student center. [Johns] was everywhere." (*Id.*)

Over time, AV-1 eventually started sleeping better at night and stopped looking for Johns everywhere she went. But "there was never a week that went by where [she] didn't think about what [Johns] did or where she was." (Exhibit A, p.2). AV-1 continued to worry that Johns would come after her. "Not knowing was awful," and AV-1 "literally lived in fear of what [Johns] might do." (*Id.*).

Nearly sixteen years passed before the FBI located Johns living in Marathon, Wisconsin, in March 2016. (ECF No. 102: PageID 1213–1214). Johns lived under the name Kimberly McGuire. (ECF No. 103: PageID 1427). Upon her arrest, Johns asked the arresting FBI agent, "what took you so long to find me? It's been almost 16 years." (ECF 102, PageID 1222). AV-1 remained on her mind. In the drive from Johns's apartment to the FBI office, she told an FBI agent that she knew AV-1 recently had a baby. (*Id.*, 1224).

When AV-1 found out that Johns had finally been arrested, she was "relieved" but also "absolutely scared out of [her] mind." (Exhibit A, p.2). She knew that she would have to go to trial and face Johns.

7

Preparing for trial was painful for AV-1, and "sitting on the [witness] stand for seven hours was the second hardest thing that [she] had ever had to do (the first was being kidnapped.)" (Exhibit A, p.2).

The history and characteristics of Johns's offenses—kidnapping and failing to appear for 15.5 years—weigh in favor of an above guidelines sentence. Johns did not voluntarily release AV-1. Johns did not turn herself into law enforcement after she fled. Instead, Johns tormented AV-1 during the kidnapping, and then fled and hid herself for a decade and a half. The original sentence of 14 years is appropriate.

    **b.    The history and characteristics of the defendant**

The history and characteristics of this defendant warrant an above guideline sentence. Before Johns met AV-1, she had another destructive relationship with a teenage girl. Less than a year before meeting AV-1, Johns dated Randi, a 16 year-old girl in Iowa. (ECF No. 102, PageID 1229–1230). As with AV-1, Johns met Randi online and lied about her identity. (*Id.*, 1235). Although Randi was only in high school, she and Johns dated for a while before Randi broke it off. (*Id.*, 1238). In December 1998, Johns arrived unannounced at Randi's house in the middle of the night. Randi's mother attempted to calm Johns

8

down, eventually inviting her into the house to spend the night. There, inside Randi's bedroom, Johns pulled out a gun and shot herself in the chest. (ECF No. 102, 1239–1243). Randi's mother awoke to the sound of a gunshot and ran into Randi's room, where she found Johns calling out for Randi with a gun in her hand and smoke coming out of her chest. (*Id.*, PageID 1240–1241). A year later, when Johns kidnapped AV-1 at gunpoint, she "talked in extreme detail about how it felt to have a bullet go through her chest and out her back, and to have the blood dripping down her back." (ECF No. 100, PageID 190). Johns asked AV-1 if she wanted "to feel what it felt like to be shot like that." (ECF No. 100, PageID 190–191).

Today, Johns claims that she has matured and grown in the years since 1998-2000. Hopefully that is true. But the impact of Johns's actions are still felt by AV-1, her family, and Randi's family. (ECF 102, PageID 1252; Exhibit A; Exhibit B, 2021 Victim Impact Statement).

In addition, Johns lived as a fugitive for 16 years after kidnapping AV-1. Johns deliberately hid her identity from those close to her, did not work, changed her name, and lived in a remote part of Wisconsin to avoid apprehension by law enforcement. Johns relied on her family,

9

including her mother, Sharon Johns, and her friends, including Miranda Babbs, to provide support to her as she lived under a false identity.

Johns's history and characteristics suggest that she when she is mentally and emotionally unstable—particularly after a relationship ends—she becomes violent towards herself and others. Her actions with Randi and AV-1 were eerily similar. In both instances, she arrived at their homes unannounced, and with a concealed firearm. Her very presence in their homes threatened to expose the past relationships to Randi and AV-1's families, and Johns used this threat to try to manipulate Randi and AV-1. Johns' history of illegal and dangerous behavior weighs in favor of a sentence above the guideline range.

### c. Seriousness of the offense, promoting respect for the law, and providing just punishment

Johns's offenses were unquestionably serious. She kidnapped AV-1 at gunpoint, held her for eight days, raped her multiple times, and then after she was arrested, she absconded for 15 years. The Court should impose the same sentence that it imposed in 2017 to recognize the seriousness of the offense, promote respect for the law, and provide

just punishment. A sentence of 14 years is the appropriate sentence under these circumstances.

### d. The Crime Victims' Rights Act

AV-1 submitted two victim impact statements to the Court. (Exhibit A, Exhibit B). In her most recent victim impact statement, she explained that she is "terrified of an early release for [Johns]." (Exhibit B). She understands that Johns is entitled to be resentenced due to a change in the law, but she explains that her "fear and emotional trauma have not changed. . . . And even though the years continue to pass by, the ability for all of the pain to flood back in an instant still stays strong." (Exhibit B). AV-1 is incredibly fearful that about what will happen when Johns is released. AV-1 asks the Court to honor the original sentence imposed in 2017.

AV-1 plans to attend the sentencing hearing. During the hearing, she may wish to invoke her right to be heard. The Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, guarantees victims in criminal cases specific rights that are enforceable in federal court. Congress enacted the CVRA in order "to protect victims and guarantee them some involvement in the criminal justice process." *United States v.*

11

*Moussaoui*, 483 F.3d 220, 234 (4th Cir. 2007). One of the rights enumerated in the CVRA is "the right to be reasonably heard at any public proceeding in the district court involving . . . sentencing" of a defendant. 18 U.S.C. § 3771(a)(4).

### *Conclusion*

The government recommends that the Court impose the same sentence that it imposed in 2017: 168 months' imprisonment.

                                                Respectfully submitted,

                                                SAIMA MOHSIN
                                                Acting U.S. Attorney

                                                <u>s/Sara D. Woodward</u>
                                                Assistant United States Attorney
                                                211 W. Fort Street, Suite 2001
                                                Detroit, MI  48226
                                                Phone:  (313) 226-9180
                                                sara.woodward@usdoj.gov

August 27, 2021

## Certificate of Service

I certify that on August 27, 2021, I electronically filed the Government's Sentencing Memorandum with the Clerk of the Court of the Eastern District of Michigan using the ECF system which will send notification of such filing to the following:

Benton Martin, FDO

s/ *Sara D. Woodward*
Assistant U.S. Attorney
U.S. Attorney's Office
